Order Entered.

*Patrick M. Flatley*
Patrick M. Flatley
United States Bankruptcy Judge

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| KENNETH GLENN DAVIS and | ) | Case No. 16-bk-00273 |
| TABATHA NICOLE DAVIS, | ) | |
| | ) | |
| Debtors. | ) | Chapter 7 |
| _____ | ) | |
| | ) | |
| TABATHA NICOLE DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No. 16-ap-30 |
| | ) | |
| LONG REACH FEDERAL CREDIT | ) | |
| UNION, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM OPINION

Long Reach Federal Credit Union (the "Defendant") seeks summary judgment on the complaint filed against it by Tabatha Nicole Davis (the "Plaintiff"). The complaint alleges a cause of action under § 525(b) of the Bankruptcy Code, which prohibits discrimination by private employers against their employees based solely on an employee's bankruptcy, insolvency, or failure to pay a debt that is dischargeable or that was discharged in a case under the Bankruptcy Code. The Defendant contends that summary judgment is appropriate because it terminated the Plaintiff's employment based upon allegations of check kiting and not her bankruptcy. The Plaintiff asserts that the court should deny summary judgment because the check kiting allegations are untrue.

For the reasons stated herein, the court will grant summary judgment to the Defendant.

1

## I.  STANDARD OF REVIEW

Federal Rule of Civil Procedure ("Rule") 56, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, provides that summary judgment is only appropriate if the movant demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party seeking summary judgment must make a prima facie case by showing: first, the apparent absence of any genuine dispute of material fact; and second, the movant's entitlement to judgment as a matter of law on the basis of undisputed facts.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The movant bears the burden of proof to establish that there is no genuine dispute of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Demonstrating an absence of any genuine dispute as to any material fact satisfies this burden.  *Id.* at 323.  Material facts are those necessary to establish the elements of the cause of action.  *Anderson*, 477 U.S. at 248.  Thus, the existence of a factual dispute is material—thereby precluding summary judgment—only if the disputed fact is determinative of the outcome under applicable law.  *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994).  A movant is entitled to judgment as a matter of law if "the record as a whole could not lead a rational trier of fact to find for the non-movant." *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (citation omitted).  *See also Anderson*, 477 U.S. at 248.

If the moving party shows that there is no genuine dispute of material fact, the nonmoving party must set forth specific facts that demonstrate the existence of a genuine dispute of fact for trial.  *Celotex Corp.*, 477 U.S. at 322-23.  The court is required to view the facts and draw reasonable inferences in the light most favorable to the nonmoving party.  *Shaw*, 13 F.3d at 798.  However, the court's role is not "to weigh the evidence and determine the truth of the matter [but to] determine whether there is a need for a trial." *Anderson*, 477 U.S. at 249-50.  Nor should the court make credibility determinations.  *Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir. 1986).  If no genuine issue of material fact exists, the court has a duty to prevent claims and defenses not supported in fact from proceeding to trial. *Celotex Corp.*, 477 U.S. at 317, 323-24.

## II.  BACKGROUND

From 2008 to 2016, the Plaintiff worked for the Defendant and reliably received positive employee performance evaluations from 2009 to 2016.  On February 5, 2016, however, Bayer Heritage Federal Credit Union, a third party financial institution, informed the Defendant of "suspicious activity" suggesting the Plaintiff was engaged in check kiting.  According to the

Defendant, it subsequently initiated an internal investigation based upon the communication from Bayer Heritage. Notably, this assertion is uncorroborated by anything in the record on summary judgment. For instance, there is no exhibit indicating when such investigation began, if at all, or what the investigation entailed.

On March 28, 2016, the Plaintiff filed a Chapter 7 bankruptcy petition. As of that date, the Plaintiff owed the Defendant a total of $208,000.00 for ten loans, both secured and unsecured. According to the Plaintiff, the Defendant directed her to teach other employees her job upon learning of her bankruptcy, but the Defendant disputes that uncorroborated fact. In any event, on April 5, 2016, the Defendant placed the Plaintiff on unpaid leave and hired an entity known as the West Virginia League Services Corporation to conduct an audit of the Plaintiff's activity. The West Virginia League Services Corporation provided the Defendant with a summary report on April 30, 2016. The report noted numerous banking transactions that resembled check kiting activity on the Plaintiff's part. On May 5, 2016, the Defendant informed its insurer, CUNA Mutual Group, of both its findings from its internal investigation and the findings of the West Virginia League Services Corporation. On the following day, CUNA Mutual Group informed the Plaintiff that her eligibility for insurance coverage for fraudulent acts was terminated, and the Defendant subsequently terminated the Plaintiff's employment based upon the allegations of check kiting, which the Defendant found in violation of its written policy regarding employee fraud.

### III. ANALYSIS

The Defendant claims that the court should grant it summary judgment because it ended the Plaintiff's employment after it received information suggesting the Plaintiff was engaged in check kiting. In support of its assertion in that regard, the Defendant provides correspondence from Bayer Heritage Federal Credit Union highlighting the Plaintiff's banking transactions that it believed were suspicious and indicative of check kiting. Notably, the Defendant received that information prepetition. However, the Defendant did not terminate the Plaintiff's employment until after she filed her bankruptcy petition on March 28, 2016. Her firing followed on the heels of the Defendant's receipt of both the report of the West Virginia League Services Corporation on April 30, 2016 and notification of the Plaintiff's loss of insurance coverage on May 6, 2016.

The Plaintiff contends, however, that the allegations of check kiting were merely a "convenient and fortuitous" pretext for the Defendant to terminate her employment after learning of her bankruptcy. In support of her argument, she points out that she received favorable

performance evaluations throughout her employment with the Defendant. Additionally, the Plaintiff stresses the inaccuracy of the Defendant's analysis and findings regarding the activity of check kiting. More specifically, she argues that the Defendant's definition of check kiting expands its application here beyond its common meaning, and she asserts the traditional meaning of check kiting—tricking banks into inflating balances—must apply to the case. Ultimately, the Plaintiff argues that if the accusations of check kiting are false or overly broad, then the court should disregard them; to do so otherwise would be to permit the Defendant to circumvent the protection afforded to debtors pursuant to § 525 of the Bankruptcy Code.

Section 525(b) of the Bankruptcy Code prohibits an employer from terminating an employee who is or has been a debtor in bankruptcy "solely because" the debtor is a debtor or insolvent. 11 U.S.C. § 525(b). It codifies the result of the Supreme Court case of *Perez v. Campbell*. S. REP. NO. 95-989, at 81 (1978). In *Perez*, the Supreme Court established anti-discriminatory protections for debtors to support establishing a fresh start. *Perez v. Campbell*, 402 U.S. 637, 650-52 (1971) (holding that state legislation cannot conflict with the Congressional policy of affording discharged debtors a new start). The Senate Report regarding § 525 demonstrates, however, that the statute does not prohibit consideration of other factors when terminating an employee. S. REP. NO. 95-989, at 81 (1978) (reasoning that future financial responsibility and net capital rules can be valid considerations). Notably, courts tend to agree that "solely because" should be read narrowly based upon the plain meaning of the statute. *See White v. Kentuckiana Livestock Mkt., Inc.*, 397 F.3d 420, 426 (6th Cir. 2005); *Laracuente v. Chase Manhattan Bank*, 891 F.2d 17, 23 (1st Cir. 1989); *In re Exquisito Servs., Inc.*, 823 F.2d 151, 153 (5th Cir. 1987); *In re Goldrich*, 771 F.2d 28, 29-30 (2d Cir. 1985).

For instance, at least one bankruptcy court employed a concept of bankruptcy neutrality to determine whether a work place policy or its implementation violated § 525. *Browning v. Tennsco Corp.* (*In re Browning*), 176 B.R. 805, 807 (Bankr. M.D. Tenn. 1995). In that regard, employer policies or their enforcement are examined to determine if an "otherwise neutral policy is applied in a discriminatory fashion toward debtors." *Id.* In *Browning*, the court held that terminating an employee for work absences—even absences due to a debtor-employee's required attendance at the § 341 meetings of creditors—was justified because under the employer's policy regarding work absences, § 341 meetings were treated no different than any other legal proceeding requiring an employee's participation. *Id.* Courts in the Fourth Circuit have similarly applied § 525 as narrowly

as possible.  In *Fiorani v. CACI*, for instance, the court reasoned that a violation of § 525 occurs only if an employer's policy unequally affects debtor-employees.  *Fiorani v. CACI*, 192 B.R. 401, 410 (E.D. Va. 1996) ("When an employer applies a policy equally without regard to the employee's bankrupt status, it cannot be liable under § 525(b).").  Likewise, another sister court within the Fourth Circuit applied a similar framework by holding that an employer may terminate a debtor employee without violating § 525 as long as the employer has cause to do so independent of the bankruptcy filing.  *In re Terry*, 7 B.R. 880, 881 (Bankr. E.D. Va. 1980).

Notably, the accuracy of an employer's non-bankruptcy reason to terminate an employee is immaterial.  *Myers v. City Nat'l Bank of W. Va.*, No. 2:10-cv-00853, 2012 U.S. Dist. LEXIS 40807, at *6 (S.D.W. Va. Mar. 26, 2012) ("Defendant's belief, even if it might ultimately be shown to be incorrect . . . is enough to defeat bankruptcy as the sole reason for his firing.").  Even if a prima facie case of discrimination is established, § 525 is not violated upon the employer providing a separate reason for the termination, unless the reason is shown to be pretextual, *Laracuente*, 891 F.2d at 23, and mere speculation by a plaintiff is not adequate to demonstrate pretext.  *Myers*, 2012 U.S. Dist. LEXIS 40807 at *8.

Here, the court finds it appropriate to grant summary judgment to the Defendant. Specifically, the court finds that the record shows that the Defendant had non-bankruptcy reasons—the suspicious activity identified by Bayer Heritage and the allegations of check kiting— for terminating the Plaintiff's employment.  The Defendant's policies regarding fraudulent conduct by its employees applied to all of its employees regardless of insolvency or bankruptcy.  Nothing in the record suggests a non-debtor employee engaged in check kiting would be treated differently than a debtor employee engaged in the same behavior.  Accordingly, the Defendant passes the test for bankruptcy neutrality under § 525.

The Plaintiff asks the court to define check kiting and dwell on whether the check kiting findings were accurate.  However, no such analysis is needed because the accuracy of the allegations is immaterial.  Moreover, the Plaintiff has not shown contrary evidence supporting her assertion that the allegations were merely pretextual.  She has simply made a bald assertion in that regard.  Because the Defendant supplied direct evidence—including the Bayer Heritage correspondence that it received prepetition and the findings of the West Virginia League Services Corporation—the court concludes that the Defendant's non-bankruptcy reason for terminating the Plaintiff's employment was not merely a pretext.  Moreover, drawing reasonable inferences in the

Plaintiff's favor, it is clear that even if the filing of the Plaintiff's bankruptcy petition was a factor in her discharge, it was not "solely" because of that fact.  The Defendant has shown an independent reason for her discharge, and the court finds that there is no genuine issue of material fact in that regard.

## IV. CONCLUSION

Based upon the foregoing, the court finds that the Defendant terminated the Plaintiff for a reason other than the Plaintiff's bankruptcy or insolvency.  The court will therefore enter a separate order granting the Defendant's Motion for Summary Judgment and dismissing the Plaintiff's complaint.